# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) DAVID SANDEL, individually and on behalf of all others similarly situated, | DOCKET NO. 19-cv-695-GKF-FHM |
| vs. | JURY TRIAL DEMANDED |
| (1) MCDANIEL TECHNICAL SERVICES, INC. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### I.  SUMMARY

1. Plaintiff David Sandel bring this lawsuit to recover unpaid overtime wages and other damages from Defendant McDaniel Technical Services, Inc. (MTSI) under the Fair Labor Standards Act (FLSA).

2. MTSI is an oil and gas pipeline and construction inspection staffing company. MTSI employs inspector personnel to carry out its work.

3. Sandel and the other workers like him regularly worked for MTSI in excess of forty (40) hours each week.

4. But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

5. Instead of paying overtime as required by the FLSA, MTSI improperly classified Sandel and those similarly situated workers as exempt employees and paid them a daily rate with no overtime compensation.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### II.  JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331

because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because MTSI conducts substantial business operations in this District and Division and also has its corporate headquarters in this District and Division in Broken Arrow, Oklahoma.

### III. THE PARTIES

9. Sandel worked for MTSI throughout 2018 as a welding inspector.

10. Throughout his employment with MTSI, Sandel was paid a day-rate with no overtime compensation.

11. Sandel's consents to be a party plaintiff is attached as Exhibit 1.

12. Sandel brings this action on behalf of himself and all other similarly situated workers who were paid by MTSI's day-rate system. MTSI paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

13. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All inspectors employed by MTSI who were paid a day rate with no overtime in the past three (3) years.** ("Putative Class Members").

14. Defendant McDaniel Technical Services, Inc. is a corporation doing business throughout the United States and may be served through its registered agent, Dustin T. McDaniel, 2005 N. Yellowood Avenue, Broken Arrow, Oklahoma 74012.

### IV. COVERAGE UNDER THE FLSA

15. At all times hereinafter mentioned, MTSI has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. At all times hereinafter mentioned, MTSI has been part of an MTSI within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17. At all times hereinafter mentioned, MTSI has been part of an MTSI engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said MTSI has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said MTSI has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

18. At all times hereinafter mentioned, Sandel and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

19. As will be shown through this litigation, MTSI treated Sandel the Putative Class Members as employees and uniformly dictated the pay practices Sandel and its other employees were subjected to.

### V. FACTS

20. "Energy companies across North America rely on MTSI to provide quality third-party inspection services, ensuring their assets are built and maintained to spec, and operate reliably and safely."[1] MTSI bills itself as "a leading provider of third party inspection services to pipeline, utility, and oil and natural gas production companies." *Id.* To complete their business objectives, MTSI hires inspector personnel (like Sandel) to perform work.

21. Many of these individuals worked for MTSI on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

---

[1] https://www.mcdanieltsi.com/services/pipeline-inspection-services/ (last visited 12/17/2019)

22. MTSI paid the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

23. Sandel normally worked 10 to 12 hours a day and six days a week.

24. Sandel was paid a day-rate of $625 per day that he worked.

25. Sandel was never guaranteed a salary when he worked for MTSI.

26. Sandel was required to report the days worked to MTSI, not the hours he worked.

27. The work Sandel performed was an essential and integral part of MTSI's core business.

28. During Sandel's employment with MTSI, it and/or the company MTSI contracted with exercised control over all aspects of his job.

29. MTSI and/or the company it contracted with controlled all the significant or meaningful aspects of the job duties performed by Sandel.

30. Even though Sandel often worked away from MTSI's offices, MTSI still controlled all aspects of Sandel's job activities by enforcing mandatory compliance with MTSI's and/or its client's policies and procedures.

31. MTSI directly determined Sandel's rates of pay, their work schedule, and prohibited them from working other jobs for other companies while he was working on jobs for MTSI.

32. Very little skill, training, or initiative was required of Sandel to perform his job duties.

33. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by MTSI and/or its clients. Virtually every job function was pre-determined by MTSI and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

34. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring no college education or other advanced degree.

35. Sandel and the Putative Class Members did not have any supervisory or management duties.

36. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

37. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

38. MTSI's policy of failing to pay its employees, including Sandel, overtime violates the FLSA because these workers are performing non-exempt job duties.

39. It is undisputed that Sandel and the Putative Class Members are performing manual labor and working long hours out in the field.

40. MTSI's day-rate system violates the FLSA because Sandel and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

## VI.    FLSA VIOLATIONS

41. As set forth herein, MTSI has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an MTSI engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

42. MTSI knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. MTSI's failure to pay

overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

43. Accordingly, Sandel and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### VII. COLLECTIVE ACTION ALLEGATIONS

44. Sandel incorporate all previous paragraphs and alleges that the illegal pay practices MTSI imposed on Sandel were likewise imposed on the Putative Class Members.

45. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

46. Numerous other individuals who worked with Sandel indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

47. Based on their experiences and tenure with MTSI, Sandel are aware that MTSI's illegal practices were imposed on the Putative Class Members.

48. The Putative Class Members were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

49. MTSI's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

50. Sandel's experiences are therefore typical of the experiences of the Putative Class Members.

51. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

52. Sandel has no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Sandel has an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

53. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

54. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and MTSI will reap the unjust benefits of violating the FLSA and applicable state labor laws.

55. Furthermore, even if some of the Putative Class Members could afford individual litigation against MTSI, it would be unduly burdensome to the judicial system.

56. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

57. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether MTSI employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA;

    b. Whether MTSI's day rate pay practice meets the salary-basis test;

    c. Whether MTSI's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

    d. Whether MTSI's violation of the FLSA was willful; and

    e. Whether MTSI's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

58. Sandel's claims are typical of the claims of the Putative Class Members. Sandel and the Putative Class Members sustained damages arising out of MTSI's illegal and uniform employment policy.

59. Sandel knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

60. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

61. Sandel demands a trial by jury.

## RELIEF SOUGHT

62. WHEREFORE, Sandel pray for judgment against MTSI as follows:

   a. An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order appointing Sandel and his counsel to represent the interests of the FLSA Class;

   c. For an Order finding MTSI liable to Sandel and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

   d. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

e.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
State Bar No. 24014780
Andrew W. Dunlap
State Bar No. 24078444
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

AND

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

AND

Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
512 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**